UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

FILED
U.S. BANKRUPTCY COURT
S.D.N.Y.
2025 NOV 25 P 1:47

In re:

ERIC R. BRAVERMAN, M.D.,

Debtor.

Chapter 11

Case No. 25-12365 (JPM)

# DEBTOR'S MOTION FOR REASONABLE ACCOMMODATIONS AND EFFECTIVE ACCESS TO THE COURT (TYPED OFFICIAL FORMS, ASSISTIVE TECHNOLOGY, AND COURTROOM DISPLAY OF RECORD)

Debtor and debtor-in-possession Eric R. Braverman, M.D. ("Debtor"), proceeding pro se, respectfully moves this Court for an order granting reasonable accommodations necessary for him to participate effectively in this Chapter 11 case, and states as follows:

## I. RELIEF REQUESTED

1. Debtor requests a narrow set of accommodations so that he may meaningfully participate in this Chapter 11 and avoid being effectively forced into the street by proceedings he cannot physically access or understand.

   Rule: Uniform bankruptcy and due process protections arise under U.S. Const. art. I, § 8, cl. 4, the Fifth Amendment, and 11 U.S.C. § 362 (automatic stay).

2. Specifically, Debtor seeks an order that:

   (a) He may dictate all required Official Forms (including the Form 106 series Schedules) and other filings,

which may be typed at his direction, and that his typed or "/s/ Eric R. Braverman, M.D." signature, accompanied by a declaration under 28 U.S.C. § 1746, be accepted as his binding signature for all purposes, including exposure under 18 U.S.C. §§ 152, 157, 1621.

(b) He may bring his smartphone into the courthouse and courtroom, in airplane mode and on silent, solely to function as (i) the Bluetooth controller and programming unit for his receiver-in-canal hearing aids, and (ii) an electronic reader for his own filed pleadings and orders.

(c) When particular ECF entries, schedules, or exhibits are the subject of argument or questioning in court, the Court will, to the extent reasonably feasible, direct that the relevant part of the record be displayed on the courtroom screen, so Debtor can visually follow what is being discussed.

Rule: These accommodations are "reasonable modifications" and "auxiliary aids and services" under 28 C.F.R. §§ 35.130(b)(7), 35.160(a)–(b) and Judicial Conference Policy, Vol. 5, Ch. 2, § 255 (auxiliary aids for participants with communication disabilities).

3. Debtor further requests that the Court clarify on the record that these accommodations are granted as a matter of federal supremacy, general welfare, and effective access to the bankruptcy system, and that they will not be used to draw any adverse inference against him.

   Rule: Supremacy arises under U.S. Const. art. VI, cl. 2; the taxing-and-spending and general welfare powers arise under U.S. Const. art. I, § 8, cl. 1, as interpreted by Hamilton's broad view of the General Welfare Clause.

---

## II. FACTUAL BACKGROUND (SHORT)

4. Debtor is a 67-year-old physician with a long-standing, severe hearing impairment, now using receiver-in-canal hearing aids that are digitally controlled by a smartphone which functions as the Bluetooth controller and adjustment device.

   Rule: A substantial limitation on hearing is a disability under 42 U.S.C. § 12102(1) (ADA definition of disability).

5. Debtor also suffers from dysgraphia, arthritis, and hand impairment, making sustained handwriting of multi-page forms essentially impossible and illegible.

   Rule: Substantial limitations in the major life activity of "writing" similarly qualify as disabilities under 42 U.S.C. § 12102(2)(A).

6. For years in state court, Debtor attempted to "work around" these impairments by paying others to listen and write for him; that model collapsed as New York state decisions, utility and mortgage actions (including child-support awards far exceeding his realistic income), and condominium/Con Edison disputes stripped his resources.

   Rule: Congress recognized that disabled individuals often find themselves in positions of "political powerlessness" and "economic hardship," which is part of the ADA's legislative findings. 42 U.S.C. § 12101(a)(6)–(7).

7. Debtor now appears pro se in a high-stakes Chapter 11 case in the Alexander Hamilton U.S. Custom House, where hearings will determine whether he can maintain housing or be rendered effectively homeless.

   Rule: Bankruptcy is meant to give debtors a fair opportunity for relief, not a paper-only process inaccessible to those with disabilities; the court's core jurisdiction over the automatic stay and property of the estate arises under 28 U.S.C. § 157(b)(2)(A), (G) and 11 U.S.C. §§ 362, 541.

8. Absent accommodations for typed forms, hearing-aid control via phone, and visual display of the record, Debtor cannot effectively understand instructions, follow argument, or respond to questions in real time, particularly in an acoustically difficult courtroom.

   Rule: The Supreme Court has held that disabled individuals must have meaningful access to courts; denying such access violates both due process and Congress's enforcement power under § 5 of the Fourteenth Amendment. See Tennessee v. Lane, 541 U.S. 509 (2004).

## III. LEGAL ARGUMENT

**POINT I**

Reasonable Accommodations Are Required to Provide Effective Access to Bankruptcy Proceedings

9. Even though the ADA and Rehabilitation Act do not technically apply to Article III courts by private cause of action, federal courts—including bankruptcy courts—are governed by Judicial Conference policy requiring auxiliary aids and services, including interpreters and other communication aids, for participants with hearing or communication disabilities.

   Rule: Judicial Conference Policy, Vol. 5, Ch. 2, § 255, requires courts to "provide sign language interpreters or other auxiliary aids and services" to participants who are deaf, hearing-impaired, or have communication disabilities.

10. In In re Balash, the Bankruptcy Court for the Northern District of New York confronted a pro se debtor's complaint about inadequate accommodations and held that, while the ADA/RA do not formally govern federal courts, courts are still obliged by Judicial Conference policy to provide auxiliary aids and that failure could raise due-process concerns.

    Rule: Balash applied Judicial Conference § 255 and evaluated whether the court had provided "every reasonable accommodation that it could," underscoring that the obligation is real, not symbolic.

11. Debtor is asking for accommodations that cost essentially nothing, do not delay proceedings, and do not alter substantive outcomes, but simply make it possible for him to hear and to comply with mandatory forms requirements.

    Rule: A "reasonable modification" is required under 28 C.F.R. § 35.130(b)(7) where necessary to avoid discrimination, unless it fundamentally alters the nature of the service.

12. Bankruptcy cases are "programs or activities" of the federal judiciary that implement the Constitution's bankruptcy power "to establish...uniform Laws on the subject of Bankruptcies throughout the United States," which is itself a tool to secure "Justice" and "the general Welfare" in the Preamble and art. I, § 8.

    Rule: Congress's spending and bankruptcy powers are understood as instruments to provide for the "general Welfare" in a Hamiltonian sense—broad enough to cover national needs, including fair administration of debt relief.

---

**POINT II**

Typed Official Forms and Dictated Content Are a Required Accommodation for a Dysgraphic, Indigent Debtor

13. Debtor is required to file the Official Forms 106 series (Schedules A/B, C, D, E/F, etc.) and a declaration about his schedules.

    Rule: Fed. R. Bankr. P. 1007 (lists, schedules, statements) and Fed. R. Bankr. P. 9009(a) (Official Forms "shall be used without alteration") require use of the forms, but do not require handwriting.

14. The Rules focus on truthful verification, not on the physical manner of writing: verifications and declarations may be unsworn but signed "under penalty of perjury" pursuant to 28 U.S.C. § 1746.

    Rule: Fed. R. Bankr. P. 1008 expressly recognizes verifications and unsworn declarations as valid, and perjury and false oath statutes apply regardless of whether the signature is handwritten or typed. See 18 U.S.C. §§ 152, 157, 1621.

15. Requiring a debtor who literally cannot write legibly for more than a sentence or two to handwrite dozens of pages of forms is not "neutral procedure"; it is a barrier that excludes him from the system based on his

disability and poverty.

Rule: 42 U.S.C. § 12132 (Title II) and 29 U.S.C. § 794(a) (§ 504) forbid exclusion "by reason of such disability" from participation in or benefits of public programs, and 28 C.F.R. § 35.160(a)(1) requires that communications with disabled persons be "as effective as communications with others."

16. A reasonable accommodation here is (1) allowing Debtor to dictate schedule content to a typist or electronic system, and (2) accepting a typed or "/s/" signature with an appropriate declaration under § 1746, making clear that he adopts the contents and accepts criminal exposure for knowing falsehoods.

    Rule: Courts already accept electronic signatures, signatures "by mark," and signatures by a third person acting "at the direction of" a disabled party, as long as the party adopts the content and accepts responsibility; nothing in the Bankruptcy Rules forbids this practice.

17. This accommodation does not change deadlines, substantive burdens, or the standards for false oaths; it only changes the physical route by which the same information reaches the court.

    Rule: Under 28 C.F.R. § 35.130(b)(7), modifications that do not fundamentally alter the service must be made when necessary to avoid discrimination.

---

**POINT III**

Phone-Based Hearing Aids and Courtroom Display of the Record Are Auxiliary Aids Required for Effective Participation

18. Debtor's modern receiver-in-canal hearing aids are designed to function with a smartphone controller, which manages Bluetooth pairing, volume, directional focus, and noise suppression. Without the phone, they revert to a generic mode, in which Debtor often understands only fragments of sentences in crowded, echoing spaces like courtrooms.

    Rule: Auxiliary aids include "qualified interpreters, notetakers, real-time transcription services, written materials, and...other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 35.104, § 35.160(b)(1).

19. A blanket "no phones" rule that refuses an exception for a phone used solely as an assistive device effectively denies Debtor the functional hearing accommodation that modern medical technology provides.

    Rule: Courts must modify "policies, practices, or procedures" where necessary to avoid discrimination, unless doing so would fundamentally alter the service or create undue burden. 28 C.F.R. § 35.130(b)(7).

20. Debtor is not asking to record proceedings, use the phone for calls, or text during court; he is asking to carry one silenced device, in airplane mode, with the sole purpose of controlling his hearing aids and viewing his own pleadings and orders.

    Rule: This is precisely the type of narrow exception that Balash contemplated when it required reasonable auxiliary aids while still enforcing local rules prohibiting recording.

21. In addition, Debtor cannot afford to print and carry hundreds of pages of schedules, motions, and exhibits that institutional parties access through ECF and internal staff; without electronic display, he cannot track which document or paragraph is being discussed in real time.

    Rule: Displaying on the courtroom screen the ECF entry under discussion is a low-cost "auxiliary aid" under 28 C.F.R. § 35.160(b)(1) and is consistent with the due-process requirement that parties have a meaningful chance to understand and respond to what is happening.

22. Denying these accommodations in a case where eviction, stay enforcement, Con Edison shutoff, and mortgage issues are at stake would, as a practical matter, exclude Debtor from his own reorganization and from any realistic chance to avoid being rendered homeless.

    Rule: The Supreme Court has recognized that denial of access to the courts for disabled individuals implicates the Due Process Clause and justified the ADA's application to judicial services as a valid exercise of

Congress's enforcement powers. See Tennessee v. Lane, 541 U.S. at 533–34.

**POINT IV**

General Welfare, Hamilton, Roosevelt, and the Supremacy of Constitutional Protections Over Dysfunctional State Processes

23. Article I empowers Congress to levy taxes "to pay the Debts and provide for the common Defence and general Welfare of the United States"; Hamilton explained that the power is "plenary" as to national purposes and that "general Welfare" was intended to signify more than the specific items that preceded it, so that "numerous exigencies" of national life, otherwise unprovided for, could be addressed.

    Rule: A Hamiltonian reading treats bankruptcy and social safety functions as part of the national general welfare, not merely local housekeeping.

24. President Theodore Roosevelt's "Square Deal" vision captured the same principle in simpler words: "We must see that each is given a square deal, because he is entitled to no more and should receive no less," and "The welfare of each of us is dependent fundamentally upon the welfare of all of us."

    Rule: These statements have been repeatedly recognized in public law scholarship as emblematic of a national duty to ensure that the law's operation on individuals is neither predatory nor indifferent to basic fairness.

25. Debtor's history in New York state courts—being given a criminal record for walking a piece of paper, facing domestic-relations awards vastly beyond his net income, and enduring utility and condominium disputes with cumulative effects that destroy his earning capacity—illustrates the exact kind of "remnants of feudal law" and factional influence that early Founders, including John Adams, warned against.

    Rule: The Supremacy Clause, U.S. Const. art. VI, cl. 2, combined with Hamilton's insistence that "No legislative act, therefore, contrary to the Constitution, can be valid" in Federalist 78, means that state procedures and outcomes cannot be allowed to nullify federal bankruptcy rights and due-process guarantees.

26. Hamilton emphasized that "the interpretation of the laws is the proper and peculiar province of the courts" and that a constitution must be treated as "fundamental law" superior to ordinary statutes.

    Rule: The Supreme Court has drawn directly on this language in cases like Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) and more recently in discussions of judicial review, underscoring that courts must refuse to enforce schemes that contradict constitutional guarantees.

27. Hamilton also warned that "Periodical appointments...would, in some way or other, be fatal to [a judge's] necessary independence," a line quoted by the Supreme Court in Stern v. Marshall, 564 U.S. 462, 507 (2011) in evaluating the limits on bankruptcy judges' power in private-rights disputes.

    Rule: In Stern, the Court used Federalist 78 to hold that Article I bankruptcy judges with 14-year terms cannot exercise the full judicial power over certain state-law claims, reinforcing that constitutional structure limits how far bankruptcy courts may go in enforcing non-federal schemes.

28. Here, Debtor is not asking this Court to overturn final state judgments wholesale, but to refuse to let state-court dysfunction, combined with his disabilities, convert this federal bankruptcy into a one-sided march to eviction and destitution in which he cannot even hear or sign.

    Rule: Under Hamilton's Federalist 78—"No legislative act, therefore, contrary to the Constitution, can be valid" —and the Court's own Article I/Article III responsibilities, this Court must at least ensure that the federal process is constitutionally sound and accessible to the disabled debtor standing before it.

29. Denying Debtor the ability to file typed forms, to hear through his medically prescribed phone-linked hearing aids, and to see the record being discussed would make this federal proceeding an embarrassment to the very "general Welfare" it is supposed to serve, contrary to both Hamilton's broad understanding of national responsibility and Theodore Roosevelt's insistence that "the welfare of each of us is dependent fundamentally upon the welfare of all of us."

    Principles of Alexander Hamilton

Alexander Hamilton, whose writings in The Federalist helped secure New York's narrow ratification of the Constitution ( the issue was supremacy over New York State law) stated in 1788 in Federalist No. 84 that "the Constitution is itself, in every rational sense, and to every useful purpose, a bill of rights," and in Federalist No. 78 that "no legislative act, therefore, contrary to the Constitution, can be valid." For a disabled debtor seeking the "fresh start" that Congress embedded in the bankruptcy power as part of the general welfare, those principles mean that this federal bankruptcy court sitting in New York cannot simply adopt or perpetuate state-court practices that effectively destroy an individual's ability to be heard/ participate or to hear , but must instead ensure that constitutional protections are real for disabled litigants through modern, practical accommodations.

## V. INCORPORATION OF DECLARATION

30. In support of this Motion, Debtor incorporates by reference his Declaration re: Disability, Official Forms, and Assistive Technology Accommodations, dated ___11/21_____, 2025 (the "Declaration"), and all factual statements therein, as if fully set forth here.

---

## VI. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Debtor respectfully requests that this Court enter an order:

1. Authorizing Debtor to dictate all required Official Forms (including the Form 106 series) and other filings to a typist or electronic system, and accepting typed and/or "/s/ Eric R. Braverman, M.D." signatures, accompanied by a declaration under 28 U.S.C. § 1746, as his binding signature for all purposes, including criminal exposure for false statements;

2. Authorizing Debtor to bring his smartphone into the courthouse and courtroom, in airplane mode and on silent, solely as (a) the Bluetooth controller for his receiver-in-canal hearing aids, and (b) a device on which he may view his own filed pleadings, schedules, and orders;

3. Directing that, when specific ECF entries, schedules, or exhibits are the subject of argument or questioning, the Court will, to the extent reasonably feasible, have the relevant document or excerpt displayed on the courtroom screen so Debtor can visually follow the discussion;

4. Clarifying that these accommodations are granted pursuant to Judicial Conference Policy, the principles reflected in ADA Title II and Section 504, the Bankruptcy Code, and the Supremacy Clause, and that no adverse inference will be drawn from Debtor's reliance on them; and

5. Granting such other and further relief as the Court deems just and proper.

I submit this affirmation/declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 and CPLR 2106, as a physician and debtor, and state that the foregoing is true and correct to the best of my knowledge; with the same force and effect as a sworn affidavit in federal and New York State courts.

Executed on __11/21__________, 2025, in New York, New York.

/s/ Eric R. Braverman, M.D. for electronic.

Respectfully submitted,

---

Eric R. Braverman, M.D.

Debtor and Debtor-in-Possession

Case No. 25-12365 (JPM)

200 Chambers Street, Apts. 26C & 26D

New York, NY 10007

Tel: (347) 304-1815

Email: pathmedical@gmail.com

WARNING:
This communication and attachments may contain privileged or confidential information intended for a specific individual and purpose, and is legally protected by law. If you are not the intended recipient, you should delete this communication and shred documents/ attachments. You are hereby notified that any disclosure, copying, or distribution of this communication, or the taking of any action based on this communication is strictly prohibited, except by those legally intended for .

Eric Braverman <pathmedical@gmail.com> Fri, Nov 21, 2025 at 5:00 PM
To: Eric Braverman <pathmedical@gmail.com>, Bankruptcy Siegel Rachael <rachael.E.Siegel@usdoj.gov>, valentina.vlasova@usdoj.gov, Bankruptcy Mary Moroney <mary.moroney@usdoj.gov>

1. Declaration/ affirmation motion

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

In re:

ERIC R. BRAVERMAN, M.D.,

Debtor.




Chapter 11

Case No. 25-12365 (JPM)

## NOTICE AND DECLARATION RE: DISABILITY, OFFICIAL FORMS (FORM 106 SERIES), AND ASSISTIVE TECHNOLOGY ACCOMMODATIONS

I, Eric R. Braverman, M.D., declare under penalty of perjury as follows, as additions for the 12/9/2025 hearing to my already-uploaded document:

1. I am the debtor and debtor-in-possession in this Chapter 11 case, proceeding pro se. I am responsible under the Bankruptcy Code and Rules for full and truthful disclosure on the Official Forms. See 11 U.S.C. §§ 521, 541; Fed. R. Bankr. P. 1007, 9009(a), 1008.

2. I have two core disabilities that directly affect how I can participate in this case: (a) a long-standing, severe hearing impairment; and (b) profound difficulty writing legibly by hand (dysgraphia and hand impairment) that makes handwritten forms essentially unusable. These conditions substantially limit the major life activities of hearing and writing, placing me within the definition of a person with a disability under 42 U.S.C. § 12102(1) and 29 U.S.C. § 705(9)(B).

## A. Typed Official Forms, Dictation, and Signature – "Effective Accommodation" When I Cannot Handwrite

3. As an individual Chapter 11 debtor, I am required to file the "106 series" Schedules and related Official Forms, including Schedules A/B, C, D, E/F, G, H, I, J and the "Declaration About an Individual Debtor's Schedules." See Fed. R. Bankr. P. 1007; Official Forms 106A/B, 106C, 106D, 106E/F, 106G, 106H, 106I, 106J, 106 Declaration.

4. Fed. R. Bankr. P. 9009(a) requires that Judicial Conference Official Forms be used "without alteration" except as otherwise provided, but nothing in the Code or Rules requires that these forms be handwritten by the debtor, as opposed to being typed at the debtor's direction and signed under penalty of perjury. Fed. R. Bankr. P. 1008 and 28 U.S.C. § 1746 expressly permit verifications and unsworn declarations signed under penalty of perjury without specifying handwriting.

5. Because of dysgraphia, hand pain, and arthritis, I cannot produce more than a short handwritten note that anyone else can read; completing dozens of pages of forms by hand is physically impossible and would be illegible even if attempted. Under ADA Title II, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), a public entity or federally assisted program may not deny participation in or the benefits of its services "by reason of" disability, and 28 C.F.R. § 35.130(b)(7) requires reasonable modifications of policies, practices, or procedures when necessary to avoid discrimination.

6. The only way I can realistically comply with my disclosure obligations is to dictate the required information and have the forms typed, with my typed or electronic "/s/" signature accompanied by a declaration under penalty of perjury that I have reviewed and adopt the contents. Courts routinely accept electronic signatures and signatures by mark or at direction so long as the signer adopts the content and accepts exposure under the perjury and false oath statutes, and nothing in Fed. R. Bankr. P. 5005(a)(2) or local ECF rules prohibits a disabled debtor from using a typist or assistant.

7. I have extremely limited financial resources because of state-court rulings, criminalization of minor conduct, and cascading judgments (including alleged child support and Con Edison/Morgan Stanley/condominium disputes) that far exceeded any realistic income, leaving me unable to hire a law clerk or paid scribe. The Preamble's commitments to "promote the general Welfare" and "secure the Blessings of Liberty to ourselves and our Posterity," implemented through U.S. Const. art. I, § 8 and the uniform bankruptcy power, are not served if a disabled, indigent debtor is effectively barred from compliance because he cannot both eat and hire a typist.

8. Requiring a severely dysgraphic, indigent, pro se debtor to handwrite all Official Forms when he cannot do so legibly is not a neutral procedure; it is a barrier that makes access to bankruptcy protection contingent on physical abilities and disposable income he does not have. Under 28 C.F.R. § 35.160(a)(1)–(2), communications with disabled individuals must be "as effective as communications with others," and public entities must provide appropriate "auxiliary aids and services" to achieve that result.

9. I therefore respectfully request that this Court expressly recognize, as a reasonable accommodation consistent with ADA Title II and Section 504, that: (a) I may dictate the contents of the Form 106 series and other filings to a typist or electronic system; (b) the Court will accept typed and/or "/s/ Eric R. Braverman, M.D." signatures as my signature when accompanied by my declaration under 28 U.S.C. § 1746; and (c) no adverse inference will be drawn from my inability to handwrite.

10. I fully understand that by signing my schedules and declarations "under penalty of perjury," even via typed or electronic signature, I am fully subject to the federal perjury and bankruptcy fraud statutes, including 18 U.S.C. § 1621 (perjury), 18 U.S.C. § 152 (false oaths and declarations in bankruptcy), and 18 U.S.C. § 157 (bankruptcy fraud). These statutes apply regardless of whether the signature is handwritten or typed.

---

## B. Hearing Aids, Phone as Assistive Device, and Courtroom Display of Documents

11. Separately, I have a long-standing severe hearing impairment, which I lived with for decades—including through medical school, medical practice, and earlier litigation—by straining to hear and at great interpersonal cost, often missing much of what was said beyond a short physical range. A substantial limitation on hearing is a textbook disability under 42 U.S.C. § 12102(1)(A) and triggers disability protections in court settings.

12. Only in recent years have I obtained receiver-in-canal hearing aids that are digitally controlled through my smartphone, which functions as the Bluetooth controller and programming unit; without the phone, they default to a generic program that is inadequate in a courtroom. Under 28 C.F.R. § 35.160(a)–(b), courts must provide "effective communication" by furnishing appropriate auxiliary aids and services, and a device that controls and optimizes hearing aids is exactly the type of auxiliary aid contemplated.

13. I am not asking to use my phone in court for calls, texts, recording, or photography; I am requesting permission to bring it in airplane mode, on silent, strictly as a controller for my hearing aids and, secondarily, as a reader for my own filed documents. A narrow exception to a blanket "no phones" policy is a reasonable modification

under 28 C.F.R. § 35.130(b)(7) and does not fundamentally alter the nature of bankruptcy proceedings.

14. As a pro se debtor in a complex Chapter 11 case with a voluminous record, I cannot carry or print the hundreds of pages of schedules, pleadings, and orders that institutional creditors and the U.S. Trustee can access electronically. The Preamble's goals to "establish Justice," "insure domestic Tranquility," and "promote the general Welfare," together with U.S. Const. art. I, § 8, cl. 4 (uniform bankruptcy laws), support procedures that do not make meaningful participation contingent on having secretarial staff and private law libraries.

15. Effective participation for me requires two additional, modest measures: (a) permission to view my own pleadings and orders on the same silent device that controls my hearing aids; and (b) direction that when the Court or counsel refer to specific ECF entries or exhibits in this large file, those documents be displayed on the courtroom screen so I can visually track what is being discussed. Visual display of referenced documents is an "auxiliary aid" within 28 C.F.R. § 35.160(b)(1) and is consistent with the due-process requirement of a meaningful opportunity to be heard under the Fifth Amendment.

16. In In re Balash (Bankr. N.D.N.Y. Jan. 2025), a bankruptcy court in this Circuit recognized that while the ADA and Rehabilitation Act technically do not apply directly to Article III courts, Judicial Conference policy requires federal courts to provide auxiliary aids and services—including sign-language interpreters and CART—for individuals with hearing impairments. Judicial Conference Policy, Vol. 5, Ch. 2 § 255, thus functions as an internal implementation of the same constitutional and statutory commitment to effective access and aligns with the spirit of Section 504 and the ADA.

---

## C. Supremacy, New York's History, and the Need for Federal Protection in This Case

17. I appear in the Alexander Hamilton courthouse in a case that lies at the intersection of federal bankruptcy supremacy and long-standing New York patterns: welcoming productive residents and then, through layers of state procedures, liens, utility actions, and domestic relations orders, stripping them of the fruits of their labor and family stability. Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, and the federal bankruptcy and general welfare powers in U.S. Const. art. I, § 8, federal bankruptcy courts should not permit state-court procedures and private creditors to operate in ways that effectively nullify federal rights and protections.

18. In my own history, New York state courts gave me a criminal record (a Class C misdemeanor) for walking a piece of paper, without a jury trial, and with consequences that effectively impaired my medical license and reputation for years, at the same time imposing child-support obligations and other rulings far beyond any realistic net income. These outcomes raise serious questions under the Seventh Amendment (jury rights), the Fifth and Fourteenth Amendments (due process), and the critique, dating back at least to John Adams, of "remnants of feudal law" and concentrated power manipulating courts against individuals.

19. For many years, I did not fully assert how disabled I was because I was accustomed to paying others to "hear for me" and believed I could compensate through extra preparation; that strategy collapsed when Con Edison, Morgan Stanley, condominium actions, and family-law rulings destroyed my finances and left me unable to buy the accommodations I previously self-funded. The ADA and Section 504 are precisely designed for this context: when private work-around strategies are no longer possible, the public system must ensure reasonable accommodations so that access does not depend on personal wealth. See 42 U.S.C. § 12101(a)(7).

20. If this Court were to insist on handwritten forms I cannot physically produce, prohibit the phone-based system required to make my hearing aids effective, and conduct fast-moving hearings without visual display of key documents, the combined effect would be to exclude me in practice from my own reorganization. That exclusion would contradict the principles reflected in ADA Title II, Section 504, Judicial Conference policy on auxiliary aids, the Supremacy Clause, and the Constitution's structural commitment to "Justice," "general Welfare," and "Blessings of Liberty" for individual citizens as much as for institutions.

---

## D. Specific Relief Requested

21. For the reasons above, I respectfully request that the Court enter an order or otherwise direct that:

(a) I may dictate all required forms and schedules (including the Form 106 series) to a typist or electronic system, and

those forms may be filed typed;

(b) My typed or "/s/ Eric R. Braverman, M.D." signature, accompanied by a declaration under 28 U.S.C. § 1746, will be accepted as my signature for all purposes, including perjury and bankruptcy-fraud exposure;

(c) I may bring my smartphone into the courthouse and courtroom in airplane mode, on silent, to function solely as (i) the controller and Bluetooth bridge for my receiver-in-canal hearing aids, and (ii) an electronic reader for my own filed documents; and

(d) When specific ECF entries or exhibits are the subject of discussion in court, the Court will, to the extent reasonably feasible, direct that those materials be displayed on the courtroom screen so I can follow along visually.

These accommodations are reasonable modifications and auxiliary aids within the meaning of 28 C.F.R. §§ 35.130(b)(7), 35.160, consistent with Judicial Conference policy, Fed. R. Bankr. P. 1007, 9009, 1008, and the Constitution's bankruptcy, due-process, and supremacy principles.

---

I submit this affirmation/declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 and CPLR 2106, as a physician and debtor, and state that the foregoing is true and correct to the best of my knowledge, and with the same force and effect as a sworn affidavit in federal and New York State courts.

Executed on 11/21________, 2025, in New York, New York.

/s/ Eric R. Braverman, M.D.
Eric R. Braverman, M.D.

Debtor and Debtor-in-Possession

Case No. 25-12365 (JPM)

200 Chambers Street, Apts. 26C & 26D

New York, NY 10007

Tel: (347) 304-1815

Email: pathmedical@gmail.com

***ERIC BRAVERMAN, M.D.***

WARNING: The above email may contain patient identifiable or confidential information. Because email is not secure, please be aware of associated risks of email transmission. If you are a patient, communicating to this Provider via email implies your agreement to email communication.
This communication and attachments may contain privileged or confidential information intended for a specific individual and purpose, and is legally protected by law. If you are not the intended recipient, you should delete this communication and shred documents/ attachments. You are hereby notified that any disclosure, copying, or distribution of this communication, or the taking of any action based on this communication is strictly prohibited. Although this message and any attachments are believed to be free of any virus or other defects that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender/corporation for any loss or damage in any way from its use.